In the Matter of the Petition of BERTHA A. MAGNUS to Prove the Last Will and Testament of SARAH A. EGERTON, Late of the County of Kings, Deceased.

WILLIAM C. EGERTON, Appellant; MABEL BERTHA ANDERSON and Another, Respondents.

Second Department, July 31, 1917.

**Will — trust — trust of personal property during period of three lives invalid — when fund cannot be divided to form separate trusts.**

Where a testator directed his executors to invest all his property and to pay the income therefrom monthly in certain proportions to his son and two daughters of said son, and further provided that on the death of the son " his share of the income " should be paid to the two daughters equally, and that in the event of the death of either or both of the daughters without issue, their " share of the income " should be paid to the son, and in the event of the death of all of the three beneficiaries without issue, the executors were to pay the income and principal to the testator's next of kin, there was an unlawful suspension of the ownership of personal property, contrary to section 11 of the Personal Property Law, as the principal cannot be paid over until the death of three persons in being.

Said trust cannot be made valid on the theory that the fund can be severed so as to form distinct trusts for each of the beneficiaries, as the will itself provides otherwise, for on the death of any beneficiary only the income and not the principal from which it was derived can be paid over to the other beneficiaries, while the principal itself can only be paid over to the testator's next of kin on the death of the three beneficiaries.

It is only where income and principal are given in equal shares out of a fund kept *in solido* for convenience of investment, that the court can set apart separate and independent trusts for the several beneficiaries, so as to have in an undivided fund, separate and distinct shares.

APPEAL by William C. Egerton, contestant, from an order and decree of the Surrogate's Court of the county of Kings, entered in the office of said Surrogate's Court on the 21st day of July, 1916, admitting to probate the will of Sarah A. Egerton, and construing its provisions.

Deceased died December 18, 1915. This contest is between the son William and his stepdaughter, Emily Timmons Egerton, and his daughter, Mabel Bertha Egerton, a minor, since married, and called here Mabel Bertha Anderson. The will was executed March 5, 1915.

The important provisions are:

"*First.* After my lawful debts are paid, I direct my executors hereinafter named to invest and reinvest, buy or sell, as occasion may require, all my property, both real and personal, and to pay the income therefrom as follows:

"To my son, William C. Egerton, two-thirds, to his daughter, Mabel Bertha Egerton, one-sixth, and to his step-daughter, Emily Timmons Egerton, one-sixth. The said payments to be made monthly.

"*Second.* In the event of the death of my son, William C. Egerton, his share of the income I direct to be paid to his two daughters above mentioned, one-half to each.

"*Third.* In the event of the death of either or both of the daughters above mentioned, without issue, their share of the income, I direct to be paid to my son above mentioned.

"*Fourth.* In the event of the death of all of the above mentioned beneficiaries, without issue, I direct my executors to pay the income and principal to my next of kin."

The execution of the will has not been questioned. Appellant contends that the will created a single trust, which suspended the power of alienation beyond two lives in being.

*Benjamin Reass* [*John J. Haley* with him on the brief], for the appellant.

*Charles W. Church, Jr.*, special guardian for the respondent Mabel Bertha Anderson.

PUTNAM, J.:

We are referred to the rule that such trusts for more than one person may be treated as divided into as many parts as there are beneficiaries, so as to prevent a violation of the rule as to perpetuities.

A theoretical division may be made of the trust estate, where none was expressed, so as to sever the fund, forming a distinct trust for each of the beneficiaries. But in the effort to avoid the effect of the statute, the court cannot rightfully ignore a contrary purpose clearly expressed. To validate such provisions, there must not only be a severance of the trust fund, but if more than two lives are involved, the segregation of shares must be absolute, on the death of any beneficiary,

so that such share, both principal and income, is thereby extricated from the trust. As to such separate share, the trust then terminates. (*Wells* v. *Wells*, 88 N. Y. 323. See Thomas Estates Created by Will, 379, § 24.)

Such a situation appeared in *Leach* v. *Godwin* (198 N. Y. 35), where the proceeds of real and personal property were left to executors and trustees, who were to divide the whole " income " into three equal shares, one to be paid to the widow, another to the daughter, and the third to a grandchild until he should reach the age of twenty-six years. There were also remainders over. In case of the wife's death, the income to her was to be added to the shares of the two other beneficiaries, and similarly the income payable to the daughter upon her decease was to be added to the share of the grandchild, and a like disposition was made in case of death of the grandson, without issue. In 1910 it was held that the testamentary purpose was complicated by the income provisions by which the purpose offended against the rule against perpetuities. (*Leach* v. *Godwin,* 198 N. Y. 35.)

In this Egerton will the idea is plain if we regard only interpretation which should precede any consideration of the statute against perpetuities. (30 Cyc. 1498.) The testatrix planned one single investment of her capital. Of course this would not of itself destroy the trust. But all the subsequent provisions specify legatees' shares as " income," without mention of the principal. For example, the shares of the daughters Bertha and her stepsister Emily are described and limited as " their share of the income," which in case of death without issue are to be paid to their father, William. It is only after the remote occurrence of three successive deaths without issue that the trust ends and the executors are to " pay the income and principal to my next of kin."

We cannot ignore such definite words. Much less should they be construed against the plain meaning, so as to save a will from violating a statute of restraint, based on established public policy. It is only where income *and principal* are given in equal shares out of a fund kept *in solido* for convenience of investment, that the court can set apart separate and independent trusts for the several beneficiaries, so as to have in an undivided fund separate and distinct shares.

(*Schermerhorn* v. *Cotting*, 131 N. Y. 48; *Locke* v. *Farmers' Loan & Trust Co.*, 140 id. 135; *Matter of Mount*, 185 id. 162; *Leach* v. *Godwin*, *supra*, 35, 41.) Otherwise, on the death of one, its share is *not* segregated from the general mass, with a payment over of the principal of such share, by which its amount then definitely escapes from the trust. Here the instrument itself provides otherwise. By a separate death before the death of the last survivor, only " income " and not principal is disposed of. We may not violate this intention, or interfere with a plan so clearly provided for a disposition of the trust. (*Bailey* v. *Buffalo L., T. & S. D. Co.*, 213 N. Y. 525, 537.) Only where there is a fair room for two constructions may the court take the one to preserve rather than to overturn the instrument. (*Central Trust Co.* v. *Egleston*, 185 N. Y. 23.) This will speaks from the testatrix's own death, and the provisions for successive deaths refer to such events, either before, or after, the death of the testatrix. (See *Nellis* v. *Nellis*, 99 N. Y. 512.)

I, therefore, recommend to reverse the decree of the Surrogate's Court of Kings county, and to pronounce the attempted trust invalid, as in conflict with section 11 of the Personal Property Law (Consol. Laws, chap. 41; Laws of 1909, chap. 45), inasmuch as the future estates do not absolutely terminate within the period of two lives in being at the testatrix's death; such reversal to be with costs to the contestant, also to the special guardian, payable out of the estate.

JENKS, P. J., STAPLETON, RICH and BLACKMAR, JJ., concurred.

Decree of the Surrogate's Court of Kings county reversed in accordance with opinion, with costs to the contestant, also to the special guardian, payable out of the estate.